# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| GLADYS PETERSON and <br> CHARLES PETERSON, <br><br>     Plaintiff, <br><br> v. <br><br> NASIR H. FARRAKHAN and <br> LOUIS FARRAKHAN, <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )      NO. 2:03-CV-319 PS <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

Nasir Farrakhan took his father's Hummer SUV from his father's vacation home in Michigan and allegedly caused an accident with it in Indiana in which the Plaintiffs sustained personal injuries. From the very beginning of this action, Minister Louis Farrakhan has denied knowing that his son Nasir was driving the SUV, has denied any involvement in the accident, and denied having any contacts with the state of Indiana. As such, Minister Farrakhan has repeatedly moved to dismiss this action for lack of personal jurisdiction. The Court denied Minister Farrakhan's previous three motions as premature and allowed the Plaintiffs to obtain discovery on the personal jurisdiction issue. That discovery is now closed, the parties have filed supplemental briefing, and the matter is ripe for resolution on the merits of the personal jurisdiction argument.

This matter is now before the Court on Minister Farrakhan's Fourth Motion to Dismiss [Doc. 69]. Because there is no evidence that Minister Farrakhan knew that Nasir had taken the Hummer SUV, and because Minister Farrakhan has no identifiable contacts with the state of Indiana, this Court lacks personal jurisdiction over Minister Farrakhan. Accordingly, Minister

Farrakhan's Fourth Motion to Dismiss is **GRANTED**.

## BACKGROUND

On May 10, 2003, Plaintiffs Gladys Peterson and Charles Peterson were involved in a two car collision in Porter County, Indiana. Plaintiffs, who were driving a Honda, were struck twice by Nasir Farrakhan, who at the time was operating a 1997 Hummer SUV. This 1997 Hummer is owned by Nasir's father, Minister Louis Farrakhan, and is registered to "Muhammad Mosque 2, Louis Farrakhan." (Ex. A to Plf. Supp. at [Doc. 96]).

Plaintiffs allege that Nasir Farrakhan was operating the Hummer in an unsafe, dangerous and illegal manner and further that Nasir's driver's license was suspended and/or revoked at the time of the collision. The Plaintiffs also allege that Louis Farrakhan was negligent, willful and wanton, and intentional in his conduct when he allowed his son to use or have access to the Hummer and when he failed to take the necessary precautions to keep his vehicle from his son Nasir's use. As a result of the accident, the Plaintiffs allege they have suffered physical injuries, incurred medical bills, suffered property damage, lost income and the opportunity to obtain income.

**A.     Nasir's Use of the Hummer SUV**

On May 9, 2003, Nasir Farrakhan's girlfriend, Jacqueline Blissmore, drove Nasir to the Farrakhans' farm in New Buffalo, Michigan to obtain Minister Farrakhan's Hummer SUV. (N. Farrakhan Dep. at 35). Nasir did not have his father's permission to use the Hummer SUV, but he took the vehicle because he was driving to an event in Chicago, Illinois and wanted to "pull up in something nice." (N. Farrakhan Dep. at 17, 21, 34). Minister Farrakhan confirmed that he did not give Nasir permission to drive the Hummer SUV. (L. Farrakhan Aff. at ¶ 14; L.

Farrakhan Dep. at 22, 28).

In fact, prior to the date of the accident, Nasir informed his father that his driver's license had been suspended due to several speeding tickets. (*Id*. at 22-23). Although Nasir had been serving as Minister Farrakhan's driver and security head up until that point of time, Minister Farrakhan relieved Nasir of all driving duties and expressly forbade him from continuing to drive any of Minister Farrakhan's vehicles. (L. Farrakhan Cont. Dep. at 19). Both Minister Farrakhan and Nasir Farrakhan testified that Minister Farrakhan made it clear to Nasir that Nasir did not have permission to drive any of Minister Farrakhan's vehicles. (L. Farrakhan Cont. Dep. at 16; N. Farrakhan Dep. at 34). Instead, Nasir rode with his girlfriend in her car throughout 2002 and 2003 (*Id*. at 19; Blissmore Dep. at 55).

Nevertheless, on May 9 and 10, Nasir took the Hummer SUV from the family compound in New Buffalo without Minister Farrakhan's permission. Nassir had access to the family farm and the building that housed the SUV because he was a member of Minister Farrakhans's immediate family. (L. Farrakhan Cont. Dep. at 21; Asmar Muhammed Dep. at 16; Aaron Muhammed Dep. at 61). Minister Farrakhan kept the keys inside the vehicle. (L. Farrakhan Cont. Dep. at 16). The New Buffalo property had two entrance gates. (*Id*. at 15). The front entrance was staffed by two guards, but those guards are not always present at the security booth. (*Id*.; Asmar Muhammed Dep. at 8). The guards did not have any authority to stop Nasir or any other member of Minister Farrakhan's immediate family. (L. Farrakhan Cont. Dep. at 15). Although Minister Farrakhan admitted that he could have instructed his guards not to let Nasir off the property with a vehicle, he did not do so because he thought that his 42-year old son would obey his instructions not to drive. (*Id*. at 16, 22-23).

Although Minister Farrakhan's daughter lived at the New Buffalo farm and served as its caretaker, it is unclear how frequently Nasir visited the New Buffalo property. We do not know whether Nasir was a regular visitor to the farm nor do we know whether Nasir visited the farm when his father was also present. Moreover, there was no evidence presented by either party to establish whether Minister Farrakhan knew when any of his nine children visited the New Buffalo property.

The Plaintiffs have submitted three affidavits purporting to demonstrate that Nasir Farrakhan regularly drove the Hummer SUV despite his father's instructions to the contrary.[1] All three are neighbors of Jacqueline Blissmore, Nasir's girlfriend. In general, the three witnesses all say that they saw the Hummer in the neighborhood and saw an African-American male driving it. However, none of the three aver that it was Nasir Farrakhan – as opposed to some other African American male – who was actually driving the Hummer.

First, Darren Condon, Blissmore's neighbor, testified that in either 2002 or 2003, he observed a Hummer SUV "drive through the neighborhood and park at Ms. Blissmore's residence." (Condon Aff. at ¶ 7). He also testified that the Hummer SUV was parked at Blissmore's residence on several occasions. (*Id*. at ¶¶ 7-9). While Condon stated that he saw an African-American male driving the Hummer SUV, he did not indicate whether that individual was Nasir Farrakhan. (*Id*. at ¶ 10). Second, John Valpatic, also a neighbor of Blissmore's,

---

[1]Without actually moving to strike the affidavits, Minister Farrakhan argues that the Court should not consider the affidavits because they are not notarized. However, "[a]n affidavit need not be notarized; it is sufficient that the affiant declare under penalty of perjury that the statements are true." *Jones v. Puckett*, 160 F. Supp. 2d 1016, 1017 (W.D. Wis. 2001). In this case, all three affidavits are signed and the declarations therein were made "under penalty provided for perjury." Therefore, we will consider the information contained in the affidavits in our analysis.

stated that in approximately May 2003, a man who Valpatic later identified as Nasir Farrakhan approached Valpatic and asked him to "jump" a dark Hummer SUV. (Valpatic Aff. at ¶¶ 1-11). Valpatic's attempt to jump the Hummer was unsuccessful. (*Id*. at ¶ 10). Valpatic did not state whether he ever observed Nasir or anyone else drive the Hummer SUV. Finally, Andrew Sallee, yet another of Blissmore's neighbors, stated that multiple times during a period of approximately three months prior to May 2003, he observed a dark green Hummer SUV parked outside Blissmore's residence and driven around the neighborhood. (Sallee Aff. at ¶ 6). Sallee stated that the SUV was driven by an African-American male, but he did not identify that person as Nasir Farrakhan. (*Id*. at ¶ 7).

Jacqueline Blissmore's testimony differed with her neighbors only in immaterial respects. Blissmore agreed that the Hummer was at her house occasionally during the relevant period of time. (Blissmore Dep. at 55). However, another African-American male came to her residence to pick-up Nasir on multiple occasions. (Blissmore Dep. at 49, 55). According to Blissmore, this other African-American male picked Nasir up at her house because Nasir "was not driving" at the time. (*Id.* at 49). When this other African-American male came to get Nasir, he would park the Hummer SUV in front of Blissmore's residence. (*Id*. at 54). However, Blissmore denied that Nasir ever asked anyone in her neighborhood for a "jump" and denied that a dark Hummer SUV would be parked in front of her house for days at a time. (*Id*. at 52, 55).

As for how Nasir would get around in those days, as mentioned earlier, Blissmore testified that she "always" drove Nasir when they went out; that was "how he got around." (*Id*. at 52, 55). Indeed, because she usually drove him around or was picked up by others, Blissmore was "shocked when she heard that he was driving (the Hummer) the day of the accident." (*Id*. at

49).

B.  **Minister Farrakhan's Contacts with Indiana**

Because the Plaintiffs make a passing assertion that Minister Farrakhan has on-going contacts with the state of Indiana sufficient to vest this Court with general personal jurisdiction, we include a brief summary of the alleged contacts that bear on the question of general personal jurisdiction.

Minister Farrakhan is a resident of Illinois and has lived in Illinois continuously for 25 years. Minister Farrakhan also maintains a farm in New Buffalo, Michigan which he uses as a retreat from time to time. Although Minister Farrakhan owns property in Indiana, he did not acquire that property until February 27, 2004 – after both the accident and the filing of this lawsuit. (L Farrakhan Reply at 9; [Doc. 66]; [Doc. 67]). Moreover, Minister Farrakhan does not reside at the Indiana property.

Minister Farrakhan serves as the spiritual leader of the Nation of Islam, a religious organization. (L. Farrakhan Dep. at 5). The Nation of Islam is a corporate entity whose business interests of the organization are overseen by a committee of persons who do not appear to include Minister Farrakhan. (*Id*. at 6, 12). The religious organization owns a trucking company that operates throughout the Midwest and maintains a mosque in Indianapolis and a meeting facility in Northwest Indiana (L. Farrakhan Dep. at 6; N. Farrakhan Dep. at 31-32). These entities are also separate corporate entities (L. Farrakhan Dep. at 13). Minister Farrakhan testified via affidavit that he does not solicit or conduct any business in Indiana nor does he derive any substantial revenue from the State of Indiana. (L. Farrakhan Aff. at ¶¶ 8, 10).

**DISCUSSION**

On December 23, 2003, this Court denied Minister Farrakhan's first Motion to Dismiss because, at the time of that order, Minister Farrakhan had not stated that he did not know that Nasir drove the Hummer SUV into Indiana. [Doc. 17]. We allowed Minister Farrakhan the opportunity to revisit this issue should discovery show that, in fact, Minister Farrakhan did not know that Nasir would drive the vehicle into Indiana. Thereafter, Minister Farrakhan moved again to dismiss the action and the Court allowed discovery into the personal jurisdiction issue. In response to Minister Farrakhan's most recent motion, the Plaintiffs have raised two separate issues. First, the Plaintiffs argue that Minister Farrakhan did, in fact, know that Nasir was driving the Hummer SUV. Second, the Plaintiffs argue that even if Minister Farrakhan was not aware that Nasir drove the Hummer into Indiana, this Court would still have jurisdiction because Minister Farrakhan maintained general on-going contacts with the state of Indiana.

**A.     Standard of Review**

Defendant Louis Farrakhan moves for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that he is not subject to the personal jurisdiction of this Court. A plaintiff bears the burden of demonstrating the existence of personal jurisdiction over a defendant and must come forth with a *prima facie* showing that jurisdiction over a defendant is proper. *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In determining whether a plaintiff has met this burden, a court may consider affidavits from both parties. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (superceded by statute on other grounds). The allegations in plaintiffs' complaint are to be taken as true unless controverted by the defendant's affidavit; and any conflicts in the affidavits are to be resolved in plaintiffs' favor.

*Id; see also Purdue*, 338 F.3d at 782-783 (noting decisions from other circuits which require affirmative evidence supporting exercise of jurisdiction when defendant has submitted affidavits or other evidence in opposition to exercise of jurisdiction).

In conducting it's personal jurisdiction analysis, the Court must first determine whether any material facts are in dispute. *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). An evidentiary hearing is only required if the Court finds disputes of material fact. *Id*. Absent such disputes, the Court may resolve the underlying personal jurisdiction issue on its merits. *Id*.

**B.     Personal Jurisdiction Analysis**

A federal district court exercising diversity jurisdiction has personal jurisdiction only if a court of the state in which it sits would have such jurisdiction. *RAR, Inc.*, 107 F.3d at 1275. Whether an Indiana state court would have jurisdiction over Mr. Farrakhan would usually require a two step analysis. *Purdue*, 338 F.3d at 779. First, the Court must determine whether the law of Indiana, specifically Indiana Trial Rule 4.4(A), subjects Mr. Farrakhan to *in personam* jurisdiction. *Id*. If it does, then the Court must determine whether the exercise of jurisdiction over Mr. Farrakhan comports with the requirements of federal due process. *Id.*

**1.     Indiana's Long-Arm Statute**

Indiana's long-arm statute contains eight enumerated acts that establish personal jurisdiction as well as a recently added catch-all provision that provides, "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. Trial Rule 4.4(a). This additional provision essentially collapses the two-prong test of personal jurisdiction test into a single inquiry of whether the exercise of personal jurisdiction is consistent with the Constitution of the United States. *See Lighthouse Carwash*

*Sys., LLC v. Illuminator Bldg. Co., LLC*, 2004 WL 2378844, * 2 (S.D. Ind. Aug. 31, 2004); *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 955 (N.D. Ind. 2004). Thus, Indiana's long arm statute is now co-extensive with the limits of due process. *Richards & O'Neil, LLP v. Conk*, 774 N.E.2d 540, 550 n. 6 (Ind.App.2002) (concurring opinion).

Nevertheless, because the Plaintiffs specifically identify three bases under the Indiana long-arm statute which they believe provide this Court with specific jurisdiction over Minister Farrakhan, we will address the specific provisions of the long-arm statute. We take each argument in turn.

### a. Doing Business

The Plaintiffs first claim that Indiana's long-arm statute applies to Minister Farrakhan because he conducts business in the state of Indiana. Ind. Trial Rule 4.4(A)(1). This specific section provides that personal jurisdiction exists if the defendant is "doing any business in this state." *Id*. Indiana state cases instruct us to use an expansive definition of the phrase "doing business." *Saler v. Irick*, 800 N.E.2d 960 (Ind. Ct. App. 2003). However, our review of that phrase is not without limitation. As the Seventh Circuit has explained:

> [o]ne way of thinking about the concept of 'doing business,' as it is understood in cases interpreting long-arm statutes and the due process limitations on the reach of those statutes . . . is that it picks out those nonresident businesses that are so like resident businesses insofar as the benefits they derive from state services are concerned, that it would give them an undeserved competitive advantage if they could escape having to defend their actions in the local courts.

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 541 (7th Cir. 1998); *North American Van Lines, Inc. v. A .Colonial Moving & Storage Co., Inc.*, 291 F. Supp. 2d 799, 805 (N.D. Ind. 2003). Thus, in determining whether an entity is conducting business in Indiana we

look to whether it has offices or sales in the state and also whether it advertises or maintains bank accounts in the state. *IDS Life*, 136 F.3d at 541; *North American Van*, 291 F. Supp. 2d at 805; *SMC Corp. of America v. King Industrial*, 2003 WL 21398103, * 4 (S.D. Ind. June 12, 2003).

We note, however, that in this case, the Plaintiffs do not allege that Minister Farrakhan personally maintains businesses in Indiana. They present no evidence that Minister Farrakhan maintains an office in Indiana or that he conducts any business in the state outside of his work as the spiritual leader of the Nation of Islam. Instead, the Plaintiffs attempt to graft the business of the Nation of Islam onto Minister Farrakhan individually because of Minister Farrakhan's position as the spiritual leader of the religion. The Plaintiffs argue that because the Nation of Islam maintains a mosque in Indiana and because Minister Farrakhan travels to that mosque on occasion in his position as the spiritual leader of the Nation of Islam, he "does business" in Indiana.

The Plaintiffs have cited no law purporting to establish that an individual, sued in his individual capacity, is subject to personal jurisdiction in Indiana because of the business contacts of the company, organization, or religion with which he is affiliated. Indeed, whether or not the business's acts could be attributed to the individual depends on the structure of the business organization. For example, it is well settled that "personal jurisdiction over a partnership has been found sufficient to establish personal jurisdiction over the general partners." *Banta Corp. v. Hunter Publishing Ltd. P'ship.*, 915 F. Supp. 80, (E.D. Wis. 1995); *Wolfson v. S&S Securities*, 756 F. Supp. 374, 377 (N.D. Ill. 1991); *see also*, *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).

However, the existing law as applied to corporate employees is the opposite. In the corporate context, the fiduciary shield doctrine provides that "jurisdictional acts as an officer of a corporation do not subject the individual to personal jurisdiction." *E.J. McGowan & Assoc. v. Biotechnologies, Inc.*, 736 F. Supp. 808, 810 (N.D. Ill. 1990) (dismissing action for lack of personal jurisdiction where only business that individual transacted in Illinois was done on behalf of the corporation); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2nd Cir. 1981). In considering this doctrine, the Second Circuit explained that

> [t]he underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.

*Id*.

In this case, there is no evidence that Minister Farrakhan conducted business in Indiana in an individual capacity. Instead, all of his alleged business contacts – multiple visits to an Indiana mosque – arose exclusively out of his work with the Nation of Islam. The Nation of Islam is a corporate entity. The Plaintiffs' unsupported contention that Minister Farrakhan *is* the Nation of Islam does not change this result. All of Minister Farrakhan's work in Indiana was performed in connection with his affiliation with the Nation of Islam. As such, Minister Farrakhan has not conducted individual business that would subject him to personal jurisdiction in his individual capacity.

  b.  **Substantial Benefit in Indiana**

The Plaintiffs next argue that because the Nation of Islam operates a trucking company in Indiana, Minister Farrakhan derives substantial revenue from Indiana. Ind. Trial Rule 4.4(A)(3). This rule confers personal jurisdiction over a nonresident who caused personal injury by an

occurrence, act or omission done outside the state if he regularly "derives substantial revenue or benefit from goods, materials, or services used, consumed or rendered in this state." *Id*. However, despite being given ample opportunity to take discovery in this matter, the Plaintiffs have not provided any evidence that Minister Farrakhan actually received any benefit, monetary or otherwise, from the business that the Nation of Islam conducts in Indiana. While there is evidence that suggests that various businesses owned or operated by the Nation of Islam operate within the state of Indiana, there is no evidence that Minister Farrakhan receives a salary from those businesses nor is there any evidence that any portion of Minister Farrakhan's income is derived from proceeds of the Nation of Islam's business interests in Indiana. As such, this does not provide a basis for personal jurisdiction.

        c.        **Act or Omission in Indiana**

Finally, taking guidance from the Court's December 13, 2003 order, the Plaintiffs claim that Minister Farrakhan is subject to personal jurisdiction in Indiana because he knew that the vehicle that he entrusted to Nasir would be driven into Indiana.

Indiana Trial Rule 4.4(A)(2) confers personal jurisdiction over a defendant who "causes personal injury . . . by an act or omission done within this state." As we noted previously, although Indiana has not yet considered the tort of negligent entrustment, other courts have held that negligent entrustment of a vehicle does constitute a tort that can establish jurisdiction over a nonresident defendant if the use of the entrusted vehicle in the forum state was foreseeable. *See* December 12, 2003 Order at 6 (citing *Tavoularis v. Womer*, 462 A.2d 110 (N.H. 1983); *Hart v. Bates*, 897 F. Supp. 710 (E.D.N.Y. 1995); *Stevenson v. Brodsal*, 813 So.2d 1046 (Fla. App. 2002)).

However, these cases all require 1) that an entrustment exist; and 2) that the entrustment could forseeably result in the use of a vehicle in the forum state. In each of those cases, the entrustment was conceded and the only issue before the courts was whether use of the vehicles in the forum states was foreseeable. *Hart*, 897 F. Supp. at 713-14 (defendant, a New York resident, testified at an evidentiary hearing that he purchased an automobile for his wife's use in her home state of Pennsylvania and that he gave his son permission to use the automobile anytime that his wife was not using it); *Tavoularis*, 462 A.3d at 111 (defendant did not dispute that he specifically allowed his friend to drive his car from Rhode Island (where they were both stationed as member of the U.S. Navy) to New Hampshire); *Stevenson*, 813 So. 2d at 1047 (defendant agreed for purposes of the motion to dismiss that he knowingly loaned his car to his son to drive in Florida and also allowed his daughter-in-law to drive the car).

In contrast, in our case, the very fact of the entrustment is disputed. As such, we must first determine whether there was an entrustment before we can determine whether or not we have jurisdiction. Because there is no evidence that Minister Farrakhan entrusted his Hummer SUV to Nasir, we find that we do not have jurisdiction.

To prove a claim of negligent entrustment, a plaintiff must prove: 1) an entrustment; 2) to an incapacitated person or one who is incapable of using due care; 3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment; 4) proximate cause; and 5) damages. *Hardsaw v. Courtney*, 665 N.E.2d 603, (Ind. App. 1996). Although Indiana law does not specifically define an entrustment, the Restatement Second of Torts clarifies that to show an entrustment, one must give express or implied permission to use the vehicle. *Norskog v. Pfiel*, 755 N.E.2d 1, 17 (Ill. 2001) (citing Restatement

(Second) of Torts § 308).

Both Minister Farrakhan and Nasir testified that Minister Farrakhan expressly forbade Nasir from driving any of his vehicles after Nasir informed the Minister that Nasir's driver's license had been suspended. Nothing that the Plaintiffs submitted in their responses to Minister Farrakhan's motion to dismiss controverts this testimony. The Plaintiffs submitted three affidavits from neighbors of Jackie Blissmore, Nasir Farrakhan's girlfriend. In those affidavits, the neighbors merely stated that they saw a dark Hummer SUV parked at Blissmore's house and that they saw an African-American male driving the SUV. None of the affiants identified the driver as Nasir Farrakhan. Moreover, the affiants who did identify Nasir Farrakhan stated only that they saw him with Blissmore in her car (Condon Aff. at ¶ 12) or that Nasir asked for a "jump" for his Hummer (Valpatic Aff. at ¶¶ 7-11). Blissmore explained the presence of the Hummer at her home during her deposition when she testified that an African-American security guard who worked for the Farrakhans would occasionally drive the Hummer SUV to her house to pick up Nasir. At those time, the security guard would park the vehicle outside of her residence. She also explained that the African-American male seen driving the Hummer SUV was probably the security guard. Blissmore denied that Nasir ever spoke with any of her neighbors.

More to the point, even if the evidence in the affidavits supports the inference that Nasir drove the Hummer SUV into Indiana prior to May 10, 2003, nothing in these affidavits or the other evidence submitted by the Plaintiffs creates a reasonable inference that Nasir had Minister Farrakhan's express or implied permission to do so. Indeed, the evidence is precisely to the contrary. To repeat, both Nasir and Minister Farrakhan testified that Minister Farrakhan

expressly prohibited Nasir from using any of the Minister's vehicles. The Plaintiffs claim, nevertheless, that Minister Farrakhan gave Nasir implied permission to use the SUV because he did not limit Nasir's access to the family retreat, did not remove the keys from the Hummer SUV, and did not instruct his guards not to allow Nasir off the property in a vehicle. This is too far a stretch.

The case upon which the Plaintiffs primarily rely, *Pierce v. Standow*, 329 P.2d 44 (Cal. App. 1958), is significantly different than this case. In *Pierce*, the defendant forbid her unlicensed 17-year old son from driving her car. *Id*. at 45. However, she also gave her son the keys to her car on a *daily* basis so that he could wait for her in the car while she finished class even though the son had repeatedly stated to her that he was anxious to drive. *Id*. at 45-46. The court concluded that the defendant's actions spoke more strongly than her words. *Id*.

In this case, Minister Farrakhan never gave Nasir keys to the Hummer. Instead, he continued on his regular course of conduct by keeping the keys in the Hummer which was secured inside the family compound. Moreover, Nasir was not a 17-year old child, but a 42-year old adult. As such, Minister Farrakhan could reasonably expect his son to obey his command without limiting Nasir's access to the family retreat or ordering his security staff to act as Nasir's babysitter.

The Plaintiffs' claims that Nasir's "frequent" use of the Hummer SUV in Indiana necessarily demonstrates that he had Minister Farrakhan's permission to use the vehicle, are equally unavailing. To begin with, any such claim overstates the evidence. The affidavits do not contain evidence of "frequent" use. In fact, none of the affiants quantify the number of times that they saw the Hummer SUV in Indiana. In fact, only one instance detailed in the affidavits –

the "jump" start incident – could affirmatively connect Nasir Farrakhan to the Hummer SUV in any capacity other than that of a passenger. Thus, there is no evidence of frequent use. Moreover, the Plaintiffs have not provided any other evidence that would suggest that Minister Farrakhan *must* have allowed Nasir to use the Hummer SUV in the face of alleged frequent use. To the contrary, Minister Farrakhan resides in Illinois and travels only occasionally to the Michigan property as a retreat. In contrast, at the time of the accident, Nasir Farrakhan resided in Wanatah, Indiana with his girlfriend. As such, it is entirely plausible that Nasir traveled to the Michigan property and took the Hummer SUV on multiple occasions without his father ever knowing. There is certainly no evidence to the contrary.

We further note that the Plaintiffs have not provided any evidence that demonstrates how much Minister Farrkhan knew about his son's private life. While we know that Nasir served as a driver and security chief for his father at one time, we also know that Minister Farrakhan relieved Nasir of many of those duties when he learned that Nasir did not have a valid drivers license. Other than that information, the Plaintiffs presented no evidence of how frequently Minister Farrakhan visited with his son, whether Minister Farrakhan new that Nasir lived with Ms. Blissmore, how frequently Nasir Farrakhan went to the family retreat in New Buffalo, nor whether Minister Farrakhan knew whether and when Nasir Farrakhan visited the New Buffalo property. Although such information might serve to strengthen the Plaintiffs' claim that Minister Farrakhan must have known and approved of Nasir's use of the Hummer, the Plaintiffs did not develop these facts. Based on the information before us, we only know that Minister Farrakhan is a septuagenarian with nine adult children. As such, it is highly unlikely that he knew of and approved (or disapproved) of all of his children's activities on a daily basis.

In sum, nothing in the Plaintiffs' evidence creates a reasonable inference that Minister Farrakhan gave Nasir permission to use the Hummer SUV on May 10, 2003 or any date prior, and the evidence is actually directly to the contrary. Because we conclude that Minister Farrakhan did not entrust the Hummer SUV to Nasir, we need not decide whether or not it was foreseeable that Nasir would drive the Hummer SUV into Indiana. Thus, we do not have personal jurisdiction over Minister Louis Farrakhan on this basis.

2.  **Due Process**

As mentioned above, personal jurisdiction can also be conferred in Indiana on "any basis not inconsistent with the Constitution . . . of the United States." Ind. Trial Rule 4.4(A). In order for personal jurisdiction to be consistent with due process, a defendant must have established minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000). A court examines whether the defendant's contacts with the state are such that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474; *Central States*, 230 F.3d at 943. The defendant must have purposefully availed himself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Burger King*, 471 U.S. at 474-75; *Central States*, 230 F.3d at 943.

There are two types of contacts that may be sufficient to establish jurisdiction: (1) the defendant's contacts with the forum state that are unrelated to the basis of the lawsuit – known as general jurisdiction; and (2) the defendant's contacts that are related to the subject matter of the

lawsuit – specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn. 8-9 (1984). We consider each of these.

### a. Specific Personal Jurisdiction

In determining whether specific personal jurisdiction exists, we must consider whether the defendant has purposefully established contact with the forum state and the basis of his lawsuit must arise out of these contacts. *Purdue Research Foundation*, 338 F.3d at 780; *See World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 292 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316-17 (1945). The analysis of contacts for specific personal jurisdiction is conducted on a case-by-case basis. *Purdue,* 338 F.3d at 780. The inquiry into minimum contacts must focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation. *Id*. When employing this test, the Supreme Court has made it clear that the court must focus on foreseeability and whether the defendant could have anticipated being haled into courts of the state with respect to the matter at issue. *Id.*

Minister Farrakhan has no contacts with the state of Indiana that are specifically related to the business of this lawsuit. Minister Farrakhan was not a driver or passenger in the Hummer SUV and was not involved in the accident in any direct way. Moreover, as noted above, although Minister Farrakhan was the owner of the Hummer SUV, there is no evidence that Minister Farrakhan entrusted his vehicle to Nasir when Nasir drove it into Indiana and allegedly caused the accident. Because we cannot say that Minister Farrakhan had contacts with the state of Indiana that are related to the Plaintiffs' accident, we do not have specific personal jurisdiction over Minister Farrakhan.

### b. General Personal Jurisdiction

A court may establish general jurisdiction over a defendant based on the defendant's contacts with the forum state, and general jurisdiction permits a court to exercise its jurisdictional power in a case where the subject matter of that case is unrelated to those contacts. *Helicopteros*, 466 U.S. at 414-16 & nn. 8-9. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more rigorous test than that associated with specific personal jurisdiction, requiring the party claiming jurisdiction to demonstrate the defendant's "continuous and systematic general business contacts." *Helicopteros,* 466 U.S. at 416.

As explained above, Minister Farrakhan has no personal business contacts with the state of Indiana. The only business contacts that Minister Farrakhan has with the state of Indiana are a result of his position as the spiritual leader of the Nation of Islam. The Nation of Islam, its mosques, and its affiliated businesses are separate corporate entities. As such, the Nation of Islam's business contacts are not imputable to Minister Farrakhan personally.

Separately, the Plaintiffs argue that Minister Farrakhan has on-going contacts with Indiana because he uses Indiana roads to travel between his home in Illinois and his retreat in Michigan. The Plaintiffs have cited no law to support the broad proposition that merely traveling through a state on its roads is enough to establish general personal jurisdiction.

Finally, Minister Farrakhan's Indiana property which he acquired after the date of the accident and after the filing of this lawsuit does not supply this Court with general personal jurisdiction. *See, e.g.*, *Anderson v. Sportmart, Inc.*, 57 F. Supp. 2d 651, 660 n.9 (N.D. Ind. 1999) ("[A] defendant's contacts with the forum ***prior to the filing of the complaint*** are relevant to the

inquiry of whether the defendant purposefully availed itself of the privilege of conducting activities in the forum state prior to the filing of the complaint.") (emphasis added); *United Phosphorus, Ltd. v. Angus Chemical Co.*, 43 F. Supp. 2d 904, 908 (N.D.Ill.1999) ("Conduct post-dating the filing of a complaint by definition cannot show that, when the defendant engaged in the post-complaint acts purportedly supporting jurisdiction, it intentionally exposed itself to the possibility of an event which had already occurred (the filing of a complaint in the forum state)"). Minister Farrakhan acquired property in Schererville, Indiana on February 27, 2004. This is after both the date of the accident and the date of the filing of this lawsuit. Accordingly, it is not a contact relevant to our general jurisdiction analysis.

In sum, Minister Farrakhan has no on-going or systematic contacts with the state of Indiana that would cause Minister Farrakhan to foresee being haled into Indiana to defend a lawsuit in 2003. As such, we lack general personal jurisdiction over Minister Farrakhan.

## CONCLUSION

Accordingly, the Court finds that the exercise of jurisdiction over Defendant Louis Farrakhan is not proper under Indiana's Trial Rule 4.4(A) and federal due process. Therefore, Defendant Louis Farrakhan's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 69] is hereby **GRANTED**. The action remains pending as to Defendant Nasir Farrakhan.

**SO ORDERED**.

ENTERED: June 22, 2006.

S/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT