UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GLADYS PETERSON and CHARLES PETERSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   No. 2:03 CV 319 PS ) |
| NASIR H. FARRAKHAN, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

While driving his father's Hummer eastbound on the Indiana Toll Road, Nasir Farrakhan ran Gladys and Charles Peterson off the road and injured them.  A jury awarded the Petersons $464,399.17 in compensatory damages and $350,000 in punitive damages against Farrakhan. The jury was instructed that an award for punitive damages was appropriate only if it found there was clear and convincing evidence that Farrakhan acted maliciously, wilfully or wantonly with conscious disregard for probable injury, or with gross negligence.  [Doc. 191.]  After trial, Farrakhan's insurer settled the case as it relates to the compensatory damages by paying the full amount of the compensatory award.  Therefore, all that is left in the case is a debate over the validity of the punitive damages award.

This matter is before the Court on Defendant's combined Rule 50(b) motion to strike punitive damages and Rule 59 motion for new trial or remittitur.  Farrakhan contends that the punitive damages award was improper because the jury was not presented with clear and convincing evidence that Defendant's actions constituted wilful or wanton misconduct or gross negligence. After a careful review of relevant federal and state law, I find that there was ample

evidence to support the jury's award of punitive damages against Farrakhan, and accordingly, the motions are **DENIED**.

## BACKGROUND

The present action arises out of the May 10, 2003, collision involving the Petersons and Farrakhan. The day prior to the collision Farrakhan's girlfriend, Jacqueline Blissmore, drove Farrakhan to his father's farm in New Buffalo, Michigan, to obtain his father's SUV because he wanted to "pull up in something nice" to an event which he was attending in Chicago. (N. Farrakhan Dep. at 17, 21, 34.) Farrakhan had to get the Hummer without his father's knowledge because his father forbade him from driving the SUV. This was because Farrakhan's license had been revoked in April 2001. (L. Farrakhan Aff. at ¶ 14, L. Farrakhan Dep. at 22, 28). Despite his father's command to the contrary and the revocation of his license, Nasir Farrakhan took the SUV from his father's farm and drove approximately 70 miles to Chicago where he attended an all-night party. The following morning, May 10, 2003, Farrakhan decided to drive back to Indiana even though he had not slept the previous night.

That same morning, Plaintiffs Gladys Peterson and Charles Peterson were traveling through Porter, Indiana, at the same time that Farrakhan was returning to Indiana. While the Petersons were proceeding eastbound on the Indiana Toll Road, Farrakhan, traveling in the left lane, quickly approached the Petersons' vehicle and passed them after they had moved their vehicle from the left to the right lane. When traffic slowed in the left lane, Farrakhan switched back to the right lane and again approached the Petersons car from the rear. Farrakhan struck the Petersons car, and then struck it again when the Petersons did not pull off the road. After the Petersons pulled off the road following the second collision, Farrakhan fled the scene.

Farrakhan continued to travel east on the toll road. He drove through a construction zone

and exited in Michigan City, Indiana. As he headed south on Route 421 he was stopped by the Indiana State Police and the LaPorte County Sheriff's Department who had received word of the accident on the toll road.

Trooper Peter L. Bradley of the Indiana State Police examined Farrakhan after he was arrested for leaving the scene of an accident. When questioned by police, Farrakhan denied any knowledge of having struck the Petersons' vehicle. Instead, Farrakhan made the astounding claim to the police that he was asleep during the entire trip. Trooper Bradley testified that when he was questioned about the accident, Defendant had difficulty staying awake and he could not recall that he was actually involved in a collision. Based on his experience gained during past investigations of numerous accidents involving truck drivers who fell asleep, Trooper Bradley testified that people who fall asleep while driving remember if they had been involved in a collision.

After stopping Farrakhan, the police administered field sobriety and breathalizer tests, both of which he passed. However, Farrakhan refused the officer's request to submit to a blood test. During his questioning of Farrakhan, Trooper Bradley found drug paraphernalia and a bottle of Vicodin in the vehicle. Trooper Bradley ultimately concluded that Farrakhan was under the influence of a controlled substance at the time of the collision because he refused to discuss or claimed to not remember the collision, he appeared to be in an impaired state when he spoke with Trooper Bradley, he was falling asleep, he refused to take a drug test, and he had a bottle of Vicodin and drug paraphernalia in the vehicle.

Eventually, Farrakhan was charged by the Indiana authorities with the offense of criminal recklessness. Prior to the civil trial, Farrakhan pled guilty to the charge of criminal recklessness. Thus, he admitted to having driven his car in a reckless way that created a danger to the

motoring public. As part of his plea agreement, Farrakhan agreed to pay the Petersons' medical bills, but he never made good on that promise.

As a result of the collision, Plaintiffs' 2002 Honda Accord sustained roughly $2,500 worth of property damage. (Def.'s Mem. in Supp. Mot., at 3).  Mr. and Mrs. Peterson were both injured in the accident, although Mrs. Peterson was injured to a far greater extent. Mrs. Peterson, who was 67 at the time of the accident, incurred $55,088.36 in medical expenses for treatment of her chronic neck and back pain following the accident.  In addition, she presented evidence to the jury that she paid $2,000 for housecleaning services after the accident and testified that she suffered a diminution in social activities.  For example, Mrs Peterson had been very active in her church prior to the accident but afterwards she could no longer assist in setting up church activities they way she once had.

## DISCUSSION

### A.  Rule 59 Motion for New Trial or Remittitur

Defendant moves for a new trial pursuant Federal Rule of Civil Procedure because the jury's award of punitive damages was against the clear weight of the evidence.  Under Rule 59, a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the Court of the United States."  Fed. R. Civ. Proc. 59(a)(1).  The Seventh Circuit has held that a court may grant a new trial if "the verdict is against the clear weight of the evidence, the damages are excessive or the trial was unfair to the moving party." *Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997); *see also Allison v. Ticor Title Ins. Co. of Chicago*, 95 F.3d 627, 636 (7th Cir. 1996).

The amount of the compensatory damages is not at issue in the motions presently before the Court.  As mentioned above, Farrakhan's insurer paid the full amount of the compensatory

damages after trial. Thus, Farrakhan only contends that the punitive damages were against the clear weight of the evidence because the evidence establishes no more than mere human error. This claim is belied by the overwhelming evidence of Farrakhan's reckless behavior.

Under Indiana law, punitive damages require a different showing than compensatory damages because its purpose is to punish and deter rather than compensate. *Westray v. Wright*, 834 N.E.2d 173, 179 (Ind. Ct. App. 2005) (citing *Cheatneam v. Pohle*, 789 N.E.2d 467, 471 (Ind. 2003)). In *Westray*, the plaintiffs sought compensatory and punitive damages following a motor vehicle accident. The court discussed the standard for awarding punitive damages:

> [T]he defendant must have subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences. The tortious conduct must be marked by malice, fraud, gross negligence, or oppressiveness not resulting from a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other noniniquitous human failing.

*Westray*, 834 N.E.2d at 179-80 (internal citations and quotations omitted); s*ee also Simon Property Group, L.P. v. mySimon, Inc.*, 2001 WL 66408, 28 (S.D. Ind. 2001) (upholding jury instruction to award punitive damages if Plaintiff could prove by clear and convincing evidence that Defendant acted maliciously, fraudulently, willfully or wantonly with conscious disregard for probable injury, or with gross negligence or oppressiveness that was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence or other human failing) (citing *Bud Wolf Cheverolet, Inc.*, 519 N.E.2d at 137-38). The plaintiff must prove the facts supporting punitive damages by clear and convincing evidence. *Simon Property Group, L.P.*, 2001 WL 66408, at 28; *Creative Demos, Inc. v. Wal-Mart Stores, Inc.*, 142 F.3d 367, 370 (7th Cir. 1998); *Westray*, 84 N.E.2d at 179-80; *Orkin Exterminating Co. v. Triana*, 486 N.e.2d 467, 471 (Ind. 1986).

Punitive damages may be awarded upon showing of a quasi-criminal state of mind or willful or wanton misconduct that, under the circumstances, the defendant knows will probably result in injury. *Cacdac, M.D. v. West*, 705 N.E.2d 506, 510 (Ind. Ct. App. 1999). These damages can be awarded if defendant's willful and wanton misconduct is shown even when there is an absence of malice, ill will or intent to injure. *Picadilly, Inc. v. Colvin*, 519 N.E.2d 135, 137 (Ind. 1988). In order for Defendant's conduct to be wilfull or wanton, two elements must be satisfied: (1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury and (2) his conduct exhibited an indifference to the consequences of his conduct. *Miner v. Southwest School Corp.*, 755 N.E.2d 1110, 1113 (Ind. Ct. App. 2001). Whether the defendant's actions rose to the level of negligence necessary to support the imposition of damages should be determined by the trier of fact. *Cacdac, M.D.*, 705 N.E.2d at 511 (citing *Mitchell v. Stevenson*, 677 N.E.2d 551, 564 (Ind. Ct. App. 1997)).

In spite of the circumstances surrounding the case, Farrakhan makes the extraordinary claim that he was asleep during the entire trip, that the collision was a result of his falling asleep and the fact that he was asleep is proof that he did not have the state of mind required to sustain punitive damages. This argument is unpersuasive. It is particularly unrealistic to think that Farrakhan was asleep during the entire trip when was able to weave in and out of traffic, switch lanes, pay tolls, maneuver through a construction zone and proceed south on U.S. 421 toward his destination. It is also unconvincing that the collision was caused entirely by a lack of sleep in light of the police officers' testimony, Farrakhan's refusal to take a blood test, and the drug paraphernalia and Vicodin found in his vehicle. Contrary to Farrakhan's claim that the evidence only establishes that he was fatigued, I find there was ample evidence to conclude that Farrakhan

was, in fact, under the influence of a controlled substance and that he chose to drive in spite of his impairment.

Under Indiana law, award of punitive damages is appropriate when the Defendant drives while in an impaired condition.  *Robbins v. McCarthy*, 581 N.E.2d 929 (Ind. Ct. App. 1991). When there is a question of whether punitive damages should be granted, the sole issue should be whether the defendant's conduct was so obdurate that he should be punished for the benefit of the general public. *Id*., at 932; *see also Davidson v. Bailey*, 826 N.E.2d 80 (Ind. Ct. App. 2005).

Farrakhan claims that the present case is different from *Robbins* and *Davidson*, because the defendants' blood alcohol content in both cases was determined to exceed the legal limit.  In particular, Farrakhan points to the testimony of Trooper Bradley which he says is more consistent with someone who was very tired than someone who was under the influence. Essentially, Farrakhan claims that the Petersons' failure to bring evidence of defendant's bad state of mind precludes a jury from awarding punitive damages.

This reasoning contradicts Indiana case law which states that a plaintiff seeking punitive damages need not present evidence inconsistent with the inference that the defendant's conduct was the result of honest, human error. *See Erie Insurance Company v. Hickman*, 605 N.E.2d 161 (Ind. 1992); *Bud Wolf Chevrolet Inc. v. Robertson*, 519 N.E.2d 135 (Ind. 1992). In *Wanke v. Lynn's Transportation Co.*, the plaintiff asked the court to infer the defendant's state of mind based on instances of conduct that tended to create a dangerous situation without bringing evidence that the defendant's conduct was inconsistent with mere negligence. *Wanke v. Lynn's Transportation Co.*, 836 F.Supp. 587, 600 (N.D. Ind. 1993). The district court, citing *Erie*, held that the plaintiff's failure to present evidence of the defendant's state of mind did not preclude the awarding of punitive damages. *Id*. at 600-01.  The court explained:

> In *Erie Insurance Company v. Hickman*, the Indiana Supreme Court repudiated dicta in *Orkin Extermination Co., In v. Traina* (citations omitted) which lower courts had interpreted to 'cloak defendants with the presumption of non-culpability' and require plaintiffs to present evidence which excluded every reasonable hypothesis of innocent conduct to prevail on a claim of punitive damages.

*Id*. at 600 (citing *Erie*, 605 N.E.2d at 162). When reviewing an award of punitive damages under Rule 59 and 50, the court must take into account the heightened standard for an award of punitive damages. *Simon Property Group, L.P.*, 2001 WL 66408, at 28. Still, the plaintiff does not need to present evidence that excludes every reasonable hypothesis of innocent conduct. *Id.*

Like the plaintiffs in *Erie* and *Wanke*, Plaintiffs in this case requested the jury to infer Farrakhan's state of mind based on the totality of the circumstances. Here, there was circumstantial and direct evidence indicating that Farrakhan intentionally disregarded the potential harm to other motorists, like the Petersons. Farrakhan stayed up all night partying and drove home without sleeping. He had Vicodin and drug paraphernalia in his SUV. The police were of the opinion that Farrakhan was under the influence of something. Farrakhan was driving without a license, and the Hummer in which he was driving was taken without his father's permission; in fact, it was directly contrary to his father's instructions. Farrakhan rammed the Petersons not once, but twice, and then he fled the scene.

More to the point, Farrakhan's plea of guilty to criminal recklessness provides evidence that he knew his willful and wanton misconduct would probably result in injury. Indiana Code §35-42-2-2(b) states that a person who performs the act of criminal recklessness is "[a] person who recklessly, knowingly, or intentionally perform (1) an act that creates a substantial risk of bodily injury to another person…" I.C. §35-42-2-2(b). By pleading guilty to criminal recklessness, Farrakhan admitted to precisely the state of mind necessary to support the award of punitive damages. *See Rudolph v. Landwerlen*, 1883 WL 5730, 2 (Ind. 1883) (holding that the

record of a guilty plea during a criminal case may be admitted into evidence in a civil action when the civil and criminal actions arise out of the same offense).

In sum, the evidence as just recounted easily established by clear and convincing evidence that Farrakhan acted with utter disregard for the safety of others and had the state of mind necessary to award punitive damages. Therefore, I deny Defendant's Rule 59 motion.

### B. Defendant is not entitled to relief under Rule 50(b).

Farrakhan also requests relief pursuant to Rule 50(b). The Petersons claim that any such motion is barred for failure to raise the issue in a motion for judgment as matter of law at any time before the case was submitted to the jury. (Plaintiffs' response, p.1.) In order to preserve the right to renew a motion for judgment as matter of law, Defendant must first have submitted a motion before the case was submitted to the jury. Fed. R. Civ. Proc. 50(a)(2). If the motion is not made prior to the rendering of the judgment, then the moving party waives the right to challenge whether the issue should have been brought to the jury. *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc*, 2004 WL 1613563 (N.D.Ill. 2004) (citing *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 2003); and *McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1555-56 (7th Cir. 1987)). The purpose of the rule is to allow the non-moving party to have the opportunity to cure any deficiency in evidence by bringing the issue to the court's attention. *Id.,* at *4.

Farrakhan did bring a Rule 56 motion for summary judgment to strike punitive damages before the beginning of the trial, which gave Plaintiffs the opportunity to cure any defects in their evidence. Therefore, the Court chooses not to decide whether Defendant effectively waived his Rule 50 rights and will instead decide this case on the merits.

The Court is precluded from re-weighing evidence when ruling on judgments as a matter

of law following jury verdicts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, I must determine, given the totality of the circumstances, whether any reasonable jury could have found that the requirements for the award of punitive damages were satisfied. *See Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004). When making the determination, a court must construe the evidence and make all reasonable inferences in the non-moving party's favor. Construing all the evidence in the Petersons' favor and for all of the reasons given for the Rule 59 motion, the Court finds that a reasonable jury could have found for the plaintiffs and, therefore, denies Farrakhan's Rule 50(b) motion.

Furthermore, the amount of punitive damages in relation to compensatory damages is appropriate. Indiana Code section 34-51-3-4 limits punitive damages to an amount not to exceed three times the amount of compensatory damages awarded. *See Gasperini v. Center for Humanities*, 518 U.S. 415 (1996) (holding that a statutory cap on damages provides substantive law for the purposes of *Erie*). The relationship of damages awarded in this case — $350,000 in punitive damages compared with $464, 399.17 in compensatory damages — is a ratio that is less than 1 to 1 and is reasonable given the facts and circumstances of this case. This is especially true given the fact that the amount of the compensatory damages is no longer being challenged.

## CONCLUSION

For the reasons stated above, Defendant's Motion for New Trial [Doc. 213] and Motion for Relief from Judgment [Doc. 214] are **DENIED.**

**SO ORDERED.**

**ENTERED**: July 9, 2007.

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE

UNITED STATES DISTRICT COURT